The’opinion of the court was delivered by
DeBlano, J.
On the 3d of October 1866, George W. Compton bor *839 rowed from William L. Sandford, eighteen hundred and eighty-seven dollars. To evidence that loan, Compton executed a note payable in January 1867, and secured its payment, by mortgage oh a plantation .situated in the parish of Bapides. . That note was not paid at its maturity, and — in January 1874 — seven years after it had matured, Sandford obtained judgment for its amount, with a recognition of the mortgage -securing its payment.
On the judgment thus obtained, execution issued, the hypothecated land was seized and the seizure enjoined by two separate and distinct ■actions, one filed in the names of the heirs of Mary E. Compton, on the ground that — -with the exception of one hundred and fifty acres of said land, alleged by them to be the property of Angus Compton, the balance of the same belonged to them by inheritance from their mother — and the other filed in the name of Angus Compton, on the ground that he ■owned the one hundred and fifty acres acknowledged by his co-heirs to be his property, by purchase from Mrs. Hamilton and Frank and John ■S. Henderson.
The first mentioned of said injunctions was decided in favor of the heirs of Mary E. Compton, who — by the decree of the court — were declared the owners of the hypothecated land, less — of course — the one ■hundred and fifty acres alleged by themselves to be the property of Angus Compton; and the latter’s injunction — as to that portion of said land — dissolved by a judgment rendered on the fifth of June 1875. From this judgment no appeal was taken; from the other, Sandford -appealed, but without success: the judgment rendered against him and in favor of the heirs of Mary E. Compton was affirmed by this Court.
An alias execution was then issued on the judgment of Sandford against George W. Compton, and — under that second execution — the one hundred and fifty acres of land disclaimed by the heirs of Mrs, Compton, and the intended sale of which her son Angus had vainly attempted to prevent, was again seized to satisfy the aforesaid judgment.
This last execution and the sale of the land seized under it were enjoined by Walter C. Compton, the plaintiff in this suit, who avers that the portion of land thus levied jupón belongs — by inheritance — to him and the other children of Mary E. Compton, and is still held in indi■vision between them: that, as one of the children of said deceased— •and not otherwise — Angus is entitled to a share in said land: that, until -■a partition fixing the locality of his'own share therein, he can not be deprived of his ownership over the entire tract inherited by them, from •their mother, and that the acknowledgment by his co-heirs and his under tutor in the injunction suit, “ that Angus is the owner of a frae-tion of that entire tract,” is not binding upon him, for the reason that rsaid acknowledgment-was made whilst he was under age, and — so far *840 as he is concerned — by Angus himself, who was then his under-tutor,, and claiming for himself the whole of the fraction alluded to.
The answer to plaintiff’s demand denies that, either at her death or at'any other time, Mrs. Mary E. Compton owned the land in question or any separate property.
If — under the pleadings — we could consider the evidence adduced of' Mrs. Compton’s title to the property mortgaged by her husband and seized to satisfy that mortgage, what does that evidence show ? that, in 1843, Mrs. George W. Compton obtained judgment against her husband for a sum which, as testified to by one of the witnesses, did not exceed two hundred and fifty dollars, a,nd — by another — four or five hundred dollars. Under two executions issued, one on her judgment — the other, on a judgment in favor of the heirs of Samuel Compton, the whole of the property of George W. Compton was seized, offered for sale and purchased by his wife for twenty thousand two hundred and ninety-one dollars, and that was, according to one of the witnesses, more than eighty times the amount of her judgment, and — according to another about forty or fifty times said amount.
During the month of May 1864, the courthouse of the parish of Rapides, and the records and papers therein contained were destroyed by fire, and — in 1868 — an act was passed by the Legislature to amend a previous act which provided for the supplying of said records and papers, among which were the judgment of and the sheriff’s sale to Mrs. George W. Compton.
The 3d section of said act is in these words: “That the party defendants in all applications for that purpose shall have the usual legal delay as in other suits, but when the said party answers he shall admit the petition or deny it partially or wholly, and said denial shall be under oath: whereupon the judge shall proceed to the trial without the intervention of a jury, and upon hearing the evidence shall decide and render judgment, establishing or not, the destroyed deed, bond, mortgage,, judgment or other writing as the evidence proves to have existed.”
The 4th Section provides: “that if the plaintiff or applicant makes, oath to the allegations of his petition, it shall be prima facie evidence-of the existence of such deed, bond, mortgage, judgment or other-writing &c.”
On the 14th of May 1869, Mrs. Compton filed an application in the district Court for the parish of Rapides, to have re-instated the sale of the 7th of October 1843, from the sheriff to her. Her husband accepted service of the wife’s unsworn application, waived time — meaning, at least we so presume, the delay allowed by law for answering, and — on the 17th of May 1869 — a decree was signed re-instating the applicant’s title, though no default had been taken against, no answer made by the defendant.
*841 The property referred to in said decree was adjudicated to Mrs. Compton for more than twenty thousand dollars, the fortieth part of which, at most, could have been applied to the execution issued on her judgment, the evidence of which was destroyed by the fire of 1864 and has not been re-established. What became of the balance of the price ? The most of the property thus acquired by her composed the .separate estate of her husband, and it may be that said balance was the consideration of the alleged reconveyance of the land in dispute from the wife to the husband.- If so, the transfer was authorized by our Code.
Rev. C. C. art. 2446, number 1.
Not only did George W. Compton mortgage this land to Sandford, but he also mortgaged it to W. C. James, the tutor of the minors Hen'derson, and when — in payment of the latter’s claim, the said Compton conveyed them the one hundred, and fifty acres which plaintiff alleges that he and his co-heirs inherited from their mother, Mrs. Compton intervened in the act of sale and renounced in favor of said minors to any right which she then had or may have had on the property so transferred to them.'
It is true that her renunciation to any rights which she might have exercised on that tract of land, could and did not divest her of any title to the land itself: but, is not that renunciation at least a presumption that — legally or otherwise — there may have been a.reconveyance from Mrs. Compton to her husband? Whether there was or not, it is now useless to inquire, and why ? The rights and the extent of the rights of plaintiff and his co-heirs, as regards the tract of land now seized, are fixed by two judgments and the judicial admissions made in the pleadings on which those judgments are based. The fact that Angus Compton was. the owner of said tract, is not merely acknowledged, but fully established by a notarial act — and neither the judgment which recognizes the title of the heirs of Mrs. Compton, to the whole of the land claimed by them, and — as an irresistible inference — the title of Angus to that part of said land which was, not only not claimed by said heirs, but expressly excepted from their demand as belonging to said Angus— nor the judgment dissolving the latter’s injunction have been attacked in nullity by plaintiff, and the first mentioned of those two judgments has been affirmed by the Supreme Court.
If, by his pleadings, plaintiff had re-opened the litigation closed by those decrees, and had supported his mother’s alleged title, by none other but the evidence which we have before us, we might well have hesitated to acknowledge the validity of that title; but that litigation was and" remains closed, and — coupled with the evidence adduced on the trial — plaintiff’s pleadings do not justify his injunction.
As to defendant’s admission that “ subsequent to the sale made by *842 the sheriff and his deed to Mrs. Compton, a reconveyance was made by her to G-. W. Compton many years before the youngest of the plaintiffs was born,” it can not be legally divided, and for the reason already stated, that Mrs. Compton was judicially separated in property from her husband, and may have transferred that land to him in payment of the balance due by her of the price of the adjudication to her of property inherited by and belonging to her husband; nor can that admission be justly disconnected from the assertion found on the same page that said land was not the property of Mrs. Compton at the time of her death. Besides, these declarations were made and passed upon in a controversy finally determined by a decree of the district Court, signed on the 5th of June 1875 and affirmed by this Court. In this case, the validity of the wife’s judgment is denied, and . her pretended title assailed as fraudulent and absolutely null. As to a part of the land, that title is protected by the aforesaid decree, which, however, does not cover the tract of one hundred and fifty acres; and — as to that tract— the injunction sued out by Angus to release its seizure and prevent its sale, was dissolved on the very day on which that of Mrs. Compton’s heirs was perpetuated — on the 5th of June 1875, and — from the decree dissolving Angus’ injunction no appeal was taken.
The plea of res judicata filed and urged by defendant must prevail, and this conclusion dispenses us from discussing the other questions raised in the briefs and bills of exceptions. That conclusion leaves no doubt that plaintiff has abused the equitable writ of injunction.
It is, therefore, ordered, adjudged and decreed that the judgment of the lower court is amended, plaintiff’s injunction entirely dissolved', and he, Angus T. Compton, and J. S. Compton — his sureties on the injunction bond, condemned in solido to pay to William L. Sandford, as damages, ten per cent upon the amount of the judgment, the execution of which was enjoined, with costs in both Courts, and — as thus amended— the decree of the Court a qua is affirmed.
The Chief Justice, having been of counsel in this case, recused himself and took no part in this decision.